# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARTHUR PACE, Jr.,**<br>    **Plaintiff,**<br><br>v.<br><br>**WAL-MART STORES EAST, LP,**<br>    **Defendant.** | **CIVIL ACTION**<br><br><br>**NO. 17-1829** |

## MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                                   September __18__ , 2018

### I.    Introduction

On August 23, 2015, Plaintiff Arthur Pace, Jr. slipped and fell on a grape or grapes or grape juice in the produce section at a Walmart in Willow Grove, Pennsylvania. He subsequently filed this action alleging one count of premises liability negligence. Defendant Wal-Mart Stores East, LP has now moved for summary judgment, which this Court **GRANTS**.

### II.    Background

On the afternoon of August 23, 2015, Plaintiff was shopping, as he often did, at a Wal-Mart in Willow Grove, Pennsylvania, with his wife, Charmone Pace, and his two children, Arthur Pace, III and Aleah Pace. (Pl.'s SOF ¶¶ 4-5; Def.'s SOF ¶¶ 4-5). Plaintiff described seeing "lots of customers in the store" and Wal-Mart associates "all over the place." (Pl.'s SOF ¶ 6; Def.'s SOF ¶ 6).

While in the produce aisle, Plaintiff slipped and fell; after falling, Plaintiff noticed a smashed grape or grapes on his shoe and in a smear on the floor. (Pl.'s SOF ¶¶ 7-9; Def.'s SOF ¶¶ 7-9). Plaintiff, in his statement of facts, conceded that he and his family did not know "how the grape(s) got onto the floor, how long the grape(s) were on the floor before the incident or whether Defendant's employees knew the grape(s) was on the floor." (Pl.'s SOF ¶¶ 15-19).

Plaintiff's injury was not captured on video submitted into the record, but a video of security camera footage entitled "Action Alley Produce" provides a partial view of the aisle in which the incident occurred. (See "Action Alley Produce," Ex. 6 to Pl.'s Opp. to Mot. for Summ. J.). The video shows the following: at approximately 3:40 PM, a Wal-Mart employee enters the produce aisle from the top of the frame, pulling a cart loaded with boxes. The employee stops next to the left-hand produce case and unloads the contents of each box into the case; once the box is empty, she can be seen breaking down the box. She pulls the cart toward the bottom of the frame at 3:45, so that thereafter the cart and boxes are mostly out of view. She exits the frame several times, usually for only a few seconds, and once (at around 3:54) for around fifteen seconds, always returning with a full box to be unloaded into the left-hand case. At 3:58, she leaves the aisle, bringing the cart with her.

Plaintiff's injury occurs just out of view below the lower right-hand corner of the frame at 4:20. A Wal-Mart employee with a clipboard can be seen at 4:21 near the lower right-hand corner of the frame, and is joined by another employee walking rapidly toward Plaintiff at 4:22. Plaintiff is helped up at 4:22, and offered a chair at 4:23, which is placed against the right-hand produce case. At 4:38, paramedics arrive with a stretcher, and then proceed to put Plaintiff on the stretcher, before wheeling him away at 4:41 PM.

The second Wal-Mart employee to arrive at the scene can be seen walking past a piece of trash or debris that a shopper dropped at 4:08. Two other Wal-Mart employees walk past the item, which is visible as a white pixel on the video, at 4:44 and 4:55. The item can be seen near a display at the end of the aisle until the end of the video.

Plaintiff evidently sought ongoing care, and saw orthopedic surgeon Dr. Mark Allen on September 21, 2015. Dr. Allen's note listed the conditions "[u]nresolved [l]umbar spine sprain";

"[l]umbar [r]adiculopathy"; and "[f]racture of the proximal fibula of the right leg."  (Note, Ex. 3 to Pl.'s Opp. to Mot. for Summ. J. at 20, ECF 22-1).  The note also stated, "It is my opinion, to a degree of medical certainty, that these conditions are a direct result of the accident of August 23, 2015."  (Id.)  Plaintiff underwent a total knee replacement in October 2017.  (Pl.'s SOF ¶ 31; Def.'s SOF ¶ 31).

Wal-Mart's corporate designee, Yvette Lomax, who has been store manager at the Wal-Mart in Willow Grove since 2017, testified that Wal-Mart has in place a policy or procedure requiring employees conduct "safety sweeps" to ensure that floors are clear of debris; if there are any spills, employees must clean up the spill or watch the spill until someone else comes to clean it up.  (Lomax Dep. 26:12-17, Ex. 4 to Pl.'s Opp. to Mot. to Dismiss, ECF 22-2).  Safety sweeps should be "consistent and constantly happening throughout the day," although no documentary records are made when sweeps happen.  (Id. 26:20-21; 27:4).  When asked questions about what had happened at the Wal-Mart in Willow Grove on August 23, 2015, such as whether the floors had been cleaned, Lomax, who had not been the store manager at that time, repeatedly stated that she could not answer the question.  (Id. 49:3-19).  Lomax did testify that she was unaware of any document that would show when the floor was cleaned or maintained at the Willow Grove Wal-Mart on August 23, 2015.  (Id. 50:4-8).

### III. Procedural History

Sometime in early 2017, Plaintiff filed this lawsuit in the Philadelphia Court of Common Pleas.  On April 18, 2017, Defendant removed this action to this Court.  (Removal, ECF 1).  Defendant filed an Answer on May 31, 2017.  (Answer, ECF 3).  After the close of discovery, Defendant moved for summary judgment on March 15, 2018.  (Def.'s Mot. for Summ. J., ECF 19).  Plaintiff filed a memorandum in opposition on April 5, 2018.  (Pl.'s Opp. to Mot. to

3

Dismiss, ECF 22). Defendant filed a reply on April 19, 2018. (Reply in Support of Mot. for Summ. J., ECF 25).

Oral argument was held on July 11, 2018. This argument was devoted mostly to the allegation of Plaintiff that Walmart had not produced a full set of the videos of the store at the time of this incident. Plaintiff's position, at that argument, was that one of the store managers had implied that the cameras taking the videos were able to cover the entire store, but there was no video produced of the section of the store where Plaintiff fell. Such a video, if it existed, was arguably relevant because it might indicate whether the cause of Plaintiff's fall was due to some act or omission by Walmart, or by a customer, or just accidentally, or otherwise. Because of that possibility, the Court indulged Plaintiff's counsel in this quest to determine whether there were additional videos. Plaintiff's counsel was, to some extent, confusing the concept of the "camera" which took the video, and the resulting videos which had been produced by Walmart. Plaintiff's counsel suggested there may be spoliation and that Walmart may have destroyed a video that showed the exact location in the store where the incident took place. As a result of this discussion, the Court then determined that it would enter an order requiring Defendant to produce an affidavit "on the subject matter of in-store videos on the day in question in this case" and allowing the affiant to be deposed for one hour. (Order, ECF 31). After Defendant submitted the affidavit of Fabian Wright (ECF 33), Plaintiff filed a motion to compel documents seeking to force Defendant to produce at the deposition a map of the store showing the locations of all cameras in the store and the direction they pointed. (Mot. to Compel, ECF 34). It is relevant to note that during the argument of July 11, 2018, Plaintiff's counsel had never requested the additional material that was requested in this motion to compel. All issues, as to any further discovery, could have been and should have been raised at the argument on July 11,

2018. In response, Defendant filed a motion for protective order requesting that this Court "quash[] Plaintiff's Request for document production and limit[] the scope of the affiant's oral deposition to concern surveillance video footage of the area of incident or lack thereof on the date of [the] incident." (Mot. for Protective Order, ECF 35). Neither Plaintiff's motion to compel nor Defendant's motion for protective order was ruled on before the deposition of Wright, a Walmart employee, which took place on July 30, 2018. He testified he had personal knowledge of the store's video system on the day of the incident, and that the defendant did not have any video of the specific location, and no videos have been destroyed. Plaintiff filed a "written report" on the Wright deposition on August 1, 2018 (ECF 37).

A telephone conference was held on August 2, 2018, at which Plaintiff's counsel requested an additional oral argument, which was held on August 23, 2018.

At the argument on August 23, 2018, Plaintiff's counsel continued to argue that the record allowed a conclusion that there was enough evidence for the Court to submit the issue of spoliation to a jury. After review of the totality of the facts that had been presented, the Court concluded that Plaintiff's counsel had not shown any spoliation by Walmart, that Plaintiff's counsel had assumed, from unsupported construction of certain words used in affidavits and depositions, that Walmart was hiding evidence.

Plaintiff has argued that Walmart's initial failure to identify Mr. Wright as a person with knowledge, Walmart's failure to follow its own procedures, an allegedly contradictory document dated July 10, 2015, and credibility disputes – all require submitting the spoliation issue to a trial jury.

**IV.     Legal Standard**

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. Summary judgment is appropriate if the non-moving party fails to rebut the motion by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**V.     Discussion**

**A. Breach of Duty and Notice**

Under Pennsylvania law, visitors to a store are "business invitees," and "[t]he duty owed to a business invitee is the highest duty owed to any entrant upon land." Campisi v. Acme Markets, Inc., 915 A.2d 117, 119 (Pa. Super. Ct. 2006). Pennsylvania has adopted the approach of the Restatement (Second) of Torts for the liability of possessors of land, such as store owners:

6

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> > a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> > b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> > c) fails to exercise reasonable care to protect them against the danger.

Henderson v. J.C. Penney, Corp., No. CIV A 08-177, 2009 WL 426180, at *3 (E.D. Pa. Feb. 20, 2009).

However, the "mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." Cox v. Wal-Mart Stores E., L.P., 350 F. App'x 741, 743 (3d Cir. 2009) (quoting Swift v. Northeastern Hospital of Philadelphia, 690 A.2d 719, 722 (Pa. Super. Ct. 1997)). Instead, to prevail on a negligence claim, a party must establish the following:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

Felix v. GMS, Zallie Holdings, Inc., 501 F. App'x 131, 134 (3d Cir. 2012) (quoting Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005)) (affirming grant of summary judgment to defendants in a case involving a slip-and-fall at a grocery store).

1. **Notice**

In slip-and-fall premises liability cases such as this one, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." Hower v. Wal-Mart Stores, Inc., No. CIV.A.08-1736, 2009 WL 1688474, at *3 (E.D. Pa. June 16, 2009). Plaintiff cannot succeed on any of these theories.

Plaintiff has presented no evidence showing that Defendant had actual knowledge of the grape(s) on the floor of the produce aisle that caused his fall, and did not argue in his brief that Defendant had actual notice.

Plaintiff likewise has not presented record evidence to support his assertions that Defendant may have created the hazardous condition in the form of the grape or grapes on the floor. His suppositions that the employee of Defendant who was unloading boxes between 3:40 and 3:58, at least 22 minutes before Plaintiff's fall at 4:20, might have dropped the grape(s) are entirely speculative. It has long been established in this Circuit that granting summary judgment to a defendant is proper "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced." Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1996); see also Carter-Butler v. Target Store #2596, No. CV 15-04030, 2016 WL 8716338, at *4 (E.D. Pa. Feb. 19, 2016) (summary judgment granted in slip-and-fall case where "sheer speculation" alone supported plaintiff's theory of negligence).

Finally, Plaintiff lacks any evidence of how long the grape(s) were on the floor, effectively foreclosing any argument that the store had constructive notice. Under Pennsylvania law, showing constructive notice "requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence." Hower, 2009 WL 1688474 at *3. Plaintiff concedes that he and his family lacked any knowledge of how long the grape(s) had been on the floor, see Pl.'s SOF ¶¶ 15-19, and has not presented any evidence elsewhere in the record on this issue.

### 2. Spoliation

For centuries, courts have "admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated." Schmid v. Milwaukee Elec. Tool Corp., 13

8

F.3d 76, 78 (3d Cir. 1994) (citing Jamie S. Gorelick, Steven Marzen and Lawrence Solum, Destruction of Evidence, § 2.1 (1989)). This type of evidence "permitted an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party." Id. Plaintiff requests such an inference in this case, and considers its lack of evidence relating to notice to have resulted from Defendant's destruction of or failure to turn over security video footage. Plaintiff requests that this Court deny summary judgment because of this alleged spoliation. (Pl.'s Mem. in Opposition to Mot. for Summ. J. ("Pl.'s Br.") at 7-13).

### a. Arguments in the Motion for Summary Judgment

Initially, Plaintiff's argument in requesting a spoliation inference was based on the deposition testimony of Assistant Manager Ikeem Shaw, as well as a video request form created by a Walmart employee a few weeks after the accident. At his deposition, Shaw testified as follows:

> Q. Are there security cameras, throughout the produce section?
> A. I believe so.
> Q. Is there any area in the produce section, that is not covered by one security camera or another?
> A. Not for certain.
> Q. You said you have access, to look at the cameras, correct?
> A. Yes.
> Q. Have you ever looked at the cameras, and found there's a particular area within produce, that is not covered by one camera or another?
> A. Not to my knowledge.

(Shaw Dep. 65:21-66:10, Ex. 5 to Pl.'s Opp. to Mot. to Dismiss, ECF 22-5). Plaintiff's counsel took photos of the store, attached as Exhibit 9 to Plaintiff's memorandum of law, which allegedly show the produce section of the store to be larger than what was depicted in the "Action Alley" video; thus, if the produce section was large, "the evidence shows that defendant has not turned over all of the video evidence in this matter." (Pl.'s Br. at 12).

9

Plaintiff also argues that seeing the purportedly missing video is vital because it might show what the Wal-Mart employee stocking shelves was doing during the moments when she was out of the camera frame: "the video of the actual area where the fall occurred would be priceless in determining if the grapes on the ground came from Walmart's own employees." (Id. at 13).

Defendant disputes the allegation of spoliation, as well as Plaintiff's request that summary judgment be denied. Defendant relies on its response to requests for admissions that there were no video cameras that would have recorded Plaintiff's fall. (Def.'s Resp. to Req. for Admissions, Ex. II to Def.'s Reply, ECF 25-3). Defendant also cites the deposition testimony of Ms. Lomax, who testified that Wal-Mart staff seeking to preserve video evidence from surveillance cameras would "get as close to the incident, if not, if there wasn't a camera in that particular area, he would get as close to the incident as he possibly could," testimony suggesting that there were areas of the store that were not covered by video. (Lomax Dep. 58:25-59:2).

The Court has reviewed above the evidence and the arguments concerning spoliation.

### b. Arguments Based on the Testimony of Fabian Wright

Subsequent to the oral argument held on July 11, 2018, Defendant provided an affidavit from Wright, Asset Protection Manager at the Walmart Store where Plaintiff fell, who had held that position at the time of Plaintiff's accident. In his affidavit, Wright averred that "[n]o recordings captured the area of incident or the incident itself" and "[n]o surveillance video recordings related to the alleged incident were destroyed." (Wright Aff. ¶¶ 6, 9, ECF 33). At Wright's deposition on July 30, 2018, Wright testified as follows:

Q. [D]o you remember doing the search back in 2015 for this case?
A. Yes.
Q. And do you remember ever seeing any footage of where my client fell?
A. No.

> Q. …[W]ould you consider that to be, from your perspective, a blind spot, a spot not covered by any cameras?
> A. Yes.
> Q. Did you report that to the management that this particular location is not covered by any cameras?
> A. Yes.

(Wright Dep. 34:11-24, ECF 37).

Immediately before the deposition, Defendant produced a "Video Request Form: Customer Accident/Incident" filled out by Wright on September 17, 2015, which Plaintiff's counsel had not previously seen. On the form, which was not filled out in much detail, Wright had circled "YES" next to "Footage Available." (Video Request Form, Ex. 2 to Wright Dep., ECF 37). When asked about the document, Wright testified that he would explain orally that the video had not captured the incident itself.

> Q. Okay. If you can't find the fall, if you can't see the fall on the cameras, do you make a note of that?
> A. No. I just tell them -- I give them their disc, give them the video, hey, I didn't find the fact -- like, we don't have that view, so I do the surroundings. That's what I give them.
> Q. All right. Did you tell them that in this case?
> A. Yes.
> Q. But you didn't write it down on the form?
> A. No.

(Wright Dep. 31:18-32:5).

On the basis of Wright's testimony, the photographs taken by Plaintiff's counsel, and the video request form, Plaintiff argues in his post-argument briefing, as he did in his motion for summary judgment, that a video showing the site of Plaintiff's accident existed and he is entitled to a spoliation inference. Defendant continues to deny that the footage existed, and argues that a spoliation inference is not warranted in this case.

### c. Application

Spoliation occurs when "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995).

Plaintiff points to no case law in which a court granted a spoliation inference where it was unclear whether the evidence actually existed; this would be a difficult task given the requirement of demonstrating "actual suppression or withholding of the evidence." See Bull, 665 F.3d at 73.

The Third Circuit has rejected requests for a spoliation inference where a plaintiff sought video footage but lacked evidence of destruction or suppression of the evidence. In a recent case involving a slip-and-fall at a store, the Third Circuit affirmed a grant of summary judgment where the plaintiff had requested, and the district court denied, a spoliation inference where the security video she was provided from a store with some stationary and some moving cameras began only after the plaintiff was on the ground. Felix v. GMS, Zallie Holdings, Inc., 501 F. App'x 131, 136 (3d Cir. 2012). The plaintiff argued that the fact that the video "beg[an] only after the fall implie[d] spoliation or destruction of evidence" by the defendant. Id. The court rejected this argument, affirming the district court's ruling denying a spoliation inference and granting summary judgment because "there was no evidence of actual destruction of the evidence or other suppression." Id.

Here, the lack of evidence of the existence of the footage—and, by extension, the lack of evidence of destruction of the purported footage—is stronger than in Felix. Wright submitted an affidavit averring to the fact that he had looked for footage of Plaintiff's fall, but no footage had actually captured it, and he had preserved what footage he had. Wright again testified at his deposition that no video showing the incident had existed, and explained his marking "YES" on the video request form as pertaining to the "surroundings" of the area where Plaintiff fell. (See Wright Dep. 31:24).

As the Court has acknowledged repeatedly throughout the proceedings in this case, spoliation is a very serious charge, and if proven, requires sanctions. Plaintiff has not shown any evidence of the existence, or "actual destruction" or "other suppression" of a video he contends exists which shows his fall; accordingly, the Court declines to hold that a mere claim of spoliation bars summary judgment in this case.

The overall record, including the Wright affidavit and his deposition, fails to allow any inference of spoliation. The Court disagrees with Plaintiff's counsel that there was sufficient evidence to allow a jury to consider spoliation. Plaintiff fails to cite any authority that a credibility dispute about spoliation of a video must be submitted to a fact finder at trial. This is a discovery issue for the Court. As the Court said at the conclusion of the hearing on August 23, 2018, the case is not about the video – "The issue is whether you have shown a disputed fact for trial that Walmart created an unsafe condition which resulted in your client falling. That's the issue."

### 3. Whether falling short of safety policies constituted a breach of the duty of care

Plaintiff finally asserts that "Defendant [was] not following its own safety policies, thereby creating an environment where a dangerous condition…can exist." (Pl.'s Br. at 7).

13

Specifically, Plaintiff points to the fact that at least one store employee walked past the piece of trash on the floor that a customer dropped—which was not the source of Plaintiff's fall—as evidence of the fact that Defendant's employees were not consistently performing the "safety sweeps" about which Lomax had testified in her deposition.[1]

In another case involving a slip-and-fall at a Wal-Mart, this Court rejected the argument that breach of company policies amounted to a breach of the duty of care. In <u>Hower v. Wal-Mart Stores, Inc.</u>, a manager of the department where the plaintiff fell was in the receiving area at the back of the store and could not hear the announcements of hourly safety sweeps. No. CIV.A.08-1736, 2009 WL 1688474, at *1 (E.D. Pa. June 16, 2009). The court rejected the plaintiff's argument that the defendant "should have (and would have) known about the spill by adhering to its safety and inspection policies." <u>Id.</u> at *6. The court identified three problems with this argument. First, such an argument

> assumes that Defendant breached a duty of care by failing to adhere to its policies. Defendant's policies are not the equivalent of its duty of care. For a variety of reasons, a store owner like Defendant may adopt safety policies that exceed the duty of care and provide greater protection to invitees. A store owner like Defendant should not be faced with a lawsuit for negligence by failing to live up to a heightened, self-imposed duty of care.

---

[1] Plaintiff's other argument that Defendant was not following its own policies with regards to the placement of rugs in store aisles is not supported by the record. Assistant Store Manager Ikeem Shaw testified that the "grape" was "by the strawberry cooler" and later testified as follows:

> Q. Now, you had mentioned that sometimes there's carpeting by the grapes.
> A. Say that again? …
> Q. There was no rug there that day. Do you know why?
> A. No, the rug – like actually where the grape fixture was?
> Q. Yeah.
> A. No, it's normally a rug like right there – like it's a wet wall kind of right there in the flower fixture, but it's never a rug just by the strawberry case.

(Shaw Dep. 77:12-13, 97:14-98:3).

Id. Second, "the argument incorrectly equates a *lack of evidence* that Defendant inspected the aisle with proof that Defendant did not inspect the aisle." Id. Finally, "the argument conflates evidence of Defendant's inspection practices with evidence of the duration of the spill. Defendant's alleged failure to perform a safety sweep says nothing about how long" the condition was present, and Defendant could not be held liable for "failing to identify and clean up a spill only a short time after its occurrence." Id.

The last consideration identified by Hower is of particular importance to this case. While the fact that employees overlooked the piece of white debris may suggest that Defendant's policies regarding safety sweeps were not honored, it does not in any way show how long the grape or grapes were on the floor. This evidence cannot charge Defendant with constructive knowledge of the grape or grapes that caused Plaintiff's fall.

**B. Causation**

Defendant asserts in its motion for summary judgment that Plaintiff failed to timely disclose the identity of his medical expert, as required by the deadlines imposed by this Court and Fed. R. Civ. P. 26(a)(2). (Def.'s Mem. in Support of Mot. for Summ. J. at 10-11, ECF 19-1). In its reply brief, Defendant asserts that, although Plaintiff had previously disclosed several notes from Dr. Mark Allen, Plaintiff's orthopedic surgeon, the expert report dated March 19, 2018 attached to Plaintiff's opposition to the motion for summary judgment (ECF 22-1 at 29-30) (which did not include Dr. Allen's CV or credentials) had not been disclosed to it prior to its being docketed with this Court on April 5, 2018. (Def.'s Reply Br. at 7, ECF 25). Defendant requests that these documents be excluded under Fed. R. Civ. P. 37(c)(1), and asserts that because no timely disclosed document made any causal link between the 2015 incident at the

Wal-Mart and Plaintiff's total knee replacement, Plaintiff "cannot establish injury causation as it relates to the need for a right total knee replacement, and his negligence claim fails." (Id. at 8-9).

Plaintiff asserted in his statement of material facts that Plaintiff had produced "more than sufficient evidence," including test results, to prove that he had suffered injury as a result of the fall at the Wal-Mart, but did not argue the issue in the body of his memorandum. (Pl.'s SOF ¶ 34).

The September 27, 2017 stipulation extending deadlines signed by counsel for both parties identifies the deadline for Plaintiff's expert report as January 16, 2018, and for Defendant's expert report as February 16, 2018. (Stipulation, ECF 11). Plaintiff's failure to file a timely expert report, to which Defendant should have had the opportunity to respond in an expert report of its own, is unexplained.

However, some of the medical notes, such as Dr. Allen's note dated September 21, 2015, less than a month after the incident—which appears to have been disclosed to Defendant, as Defendant did not include its footnote listing medical records untimely disclosed—do connect some injuries suffered by Plaintiff with the incident at the Wal-Mart. The September 21, 2015 note from Dr. Allen described Plaintiff as walking with crutches and an immobilizer, and listed the conditions "[u]nresolved [l]umbar spine sprain"; "[l]umbar [r]adiculopathy"; and "[f]racture of the proximal fibula of the right leg." (Note, Ex. 3 to Pl.'s Opp. to Mot. for Summ. J. at 20, ECF 22-1). The note also stated, "It is my opinion, to a degree of medical certainty, that these conditions are a direct result of the accident of August 23, 2015." (Id.)

At least one Circuit court has held that a failure to file an expert report does not prevent a treating physician from testifying as to the causation of an injury. In Fielden v. CSX Transp., Inc., 482 F.3d 866 (6th Cir. 2007), as amended on denial of reh'g and reh'g en banc (July 2,

2007), the Sixth Circuit reversed a district court's grant of summary judgment to a defendant in a Federal Employers Liability Act case where the lower court had excluded the testimony of the plaintiff's treating doctor as to the causation of the plaintiff's carpal tunnel syndrome because of the plaintiff's failure to file an expert report. The Sixth Circuit reversed, holding that under a "purposive reading of Rule 26, a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." Id. at 871. The court noted the potential for "permitting treating physicians to testify in all circumstances without providing expert reports" to "permit circumvention of the policies underlying the expert report requirement." Id. at 871. Because the proposed testimony created a fact issue as to liability, the court nonetheless remanded for trial, holding that the doctor should have been allowed to testify because "the plain meaning of Rule 26(a)(2)(B) indicate[d]" that the doctor did not need to file an expert report before testifying, and "there [were] no grounds to hold that [the doctor] functioned as a retained expert." Id. at 872.

Whether or not Plaintiff can show that the August 2015 fall at Wal-Mart caused him to need a knee replacement in 2017, Defendant has not shown that there is no genuine issue of material fact on the issue of causation (assuming, for a moment, a breach of duty) or that Plaintiff cannot prove causation for any damages whatsoever. Put differently, even if this Court were to exclude the late-filed expert report, Plaintiff could still show that his fall caused him some damages, such as the compensatory damages for pain and suffering he seeks. The Court therefore declines to rest its grant of summary judgment to Defendant on this potential alternate ground. However, because Plaintiff did not show that Defendant breached a duty of care, Defendant is entitled to summary judgment.

## VI. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED**.
An appropriate order follows.

O:\CIVIL 17\17-1829 Pace v Walmart\Pace MSJ Memo.docx